THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

TAMARA M. J.,[1]

    Plaintiff,

        v.                                            Civil No. 3:21-cv-00651 (MHL)

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

    Defendant.

**REPORT AND RECOMMENDATION**

This is an action seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits under the Social Security Act (the "Act"). Plaintiff was fifty-four years old at the time of her benefits application and last worked as a case manager. (R. at 287, 311.) Plaintiff alleges she is unable to work due to Crohn's disease, incontinence, erythema nodosum, a compromised immune system, fatigue, hypothyroidism, depression, and non-alcoholic fatty liver disease. (R. at 183.)

On May 21, 2020, an Administrative Law Judge ("ALJ") found Plaintiff not disabled under the Act. (R. at 214-36.) The Appeals Council granted Plaintiff's request for review and remanded the case for further administrative proceedings, including a second hearing. (R. at 237.) Following the second hearing, the ALJ again found Plaintiff not disabled. (R. at 12.) After exhausting her

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

administrative remedies, Plaintiff seeks review of the ALJ's decision. This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross motions for summary judgment, rendering the matter ripe for review.[2]

Having reviewed the parties' submissions and the record in this case, and for the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 19) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

Plaintiff filed an application for a period of disability and disability insurance benefits on September 10, 2018. (R. at 287.) The Social Security Administration ("SSA") initially denied these claims on October 29, 2018, and again upon reconsideration on July 30, 2019. (R. at 242-246, 249-255.) At Plaintiff's written request, the ALJ held a hearing on April 9, 2020, where Plaintiff testified along with a vocational expert. (R. at 116-148.) On May 21, 2020, the ALJ issued a written opinion, denying Plaintiff's claim for benefits from July 14, 2017 (the alleged onset date) through December 31, 2019 (the date last insured). (R. at 231.) On October 22, 2020, the Appeals Council vacated the ALJ's May 2020 decision and remanded the case for further administrative proceedings. (R. at 238-239.) On remand, the Appeals Council directed the ALJ to reconsider Plaintiff's residual functional capacity, provide rationale and evidence to support the assessed limitations, and to reevaluate Plaintiff's capacity to perform past relevant work. (R. at 238-39.)

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

The ALJ held a second hearing on March 10, 2021, where Plaintiff testified along with a different vocational expert. (R. at 35-61.) On March 21, 2021, the ALJ issued a decision denying Plaintiff's claim for benefits from July 14, 2017, through December 31, 2019. (R. at 34.) Plaintiff filed this action seeking judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current

work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity, accounting for the most the claimant can do despite her physical and mental limitations. § 404.1545(a).

At step four, the ALJ assesses whether the claimant can perform her past work given her residual functional capacity. § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock*, 2012 U.S. App. LEXIS 128, at *3 (citation omitted). If such work can be performed, then benefits will not be awarded, and the analysis ends at step four. § 404.1520(e). However, if the claimant cannot perform her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant is capable of performing other work that is available in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 15-34.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity[3] since her alleged disability onset date. (R. at 17.) At step two, the

---

[3] Substantial gainful activity is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or

4

ALJ found that Plaintiff had the following severe impairments: inflammatory bowel disease, Crohn's disease, depression, and anxiety. (R. at 18.) At step three, the ALJ decided that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in the regulations. (R. at 18.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity[4] and found that Plaintiff could perform light work, as defined in 20 CFR § 404.1567(b), except she could:

> [F]requently balance, stoop, kneel, crouch, crawl, climb ramps or stairs, and push/pull with the upper and lower extremities; could occasionally climb ladders, ropes, or scaffolds; frequently handle and finger items, bilaterally; and tolerate occasional exposure to vibration. She could maintain concentration, persistence, and pace in two-hour increments at a non-production pace (i.e. assembly line) in order to complete an eight-hour day; in addition to normal breaks, [Plaintiff] would be off-task five percent of time in an eight-hour workday for additional bathroom breaks.

(R. at 20.) The ALJ explained that she determined Plaintiff's residual functional capacity after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," in accordance with the regulations. (R. at 20.) Based on her residual functional capacity findings, the ALJ concluded at

---

hobbies, therapy or school attendance, and the like are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

[4] Residual functional capacity is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the residual functional capacity, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

step four that Plaintiff is unable to perform any past relevant work as actually or generally performed. (R. at 26.) At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (R. at 26.) In making her findings, the ALJ considered the testimony of a vocational expert, who opined that given Plaintiff's age, education, work experience, and residual functional capacity, she would be able to perform the requirements of representative occupations such as general office clerk, security guard, and file clerk I. (R. at 27.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (R. at 28.)

## IV. ANALYSIS

Plaintiff challenges the ALJ's finding of "not disabled" and argues that the ALJ: (1) erred in her residual functional capacity determination by not accounting for the medical opinion evidence regarding Plaintiff's absenteeism; and (2) failed to reconcile conflicting vocational expert testimony. (Pl.'s Mem. Supp. Summ. J. 1 (ECF No. 15) ("Pl.'s Mem.").) In response, Defendant maintains that substantial evidence supports the ALJ's residual functional capacity and step five findings. (Def.'s Mem. Supp. Summ. J. 19, 24 (ECF No. 19) ("Def.'s Mem.").) For the reasons set forth below, the Court concludes that the ALJ erred in her residual functional capacity analysis. As a result, the Court RECOMMENDS remand and will not address the remaining assignments of error.

**A. The ALJ Erred When Evaluating the Opinion of Plaintiff's Gastroenterologist.**

    *1. The Medical Opinion of Plaintiff's Gastroenterologist.*

Alfred Lee, M.D. ("Dr. Lee") was Plaintiff's gastroenterologist. Dr. Lee treated Plaintiff four to five times per year from November 2, 2017 to October 7, 2019. (R. at 1180.) On March 10, 2020, Dr. Lee completed a "gastrointestinal questionnaire" in which he provided his medical

6

opinion as to the level of impairment Plaintiff suffered in completing work-related activities. (R. at 1178-80.) Specifically, Dr. Lee noted that Plaintiff suffered from Crohn's disease, which caused her to have chronic and bloody diarrhea, abdominal pain and cramping, vomiting, colitis, and fecal incontinence. (R. at 1178.) According to Dr. Lee, Plaintiff's pain was located "in her extremities" and that clinical findings included diarrhea, abdominal tenderness, and a colonoscopy showing colon ulcers. (R. at 1178.) Dr. Lee opined that Plaintiff's impairments would cause her to take unscheduled bathroom breaks "multiple times" each workday lasting for twenty minutes, and that she would be absent from work "more than three times a month." (R. at 1179.) He explained that Plaintiff's fecal incontinence resulted in her "soiling [her] clothes in [an] unpredictable manner" and that her prognosis was "unknown." (R. at 1179.) He added that she "has failed multiple medications" and has suffered these symptoms since September 2017. (R. at 1179.)

    2. *The Medical Opinion Evidence.*

As part of her review, the ALJ evaluated the medical opinion evidence, noting that she was persuaded by the state agency psychological consultants' assessments that Plaintiff "would be able to complete a normal workweek, and to perform at a generally consistent pace with others, with only minimal need for accommodations on an infrequent basis." (R. at 23.) The ALJ explained that these assessments were consistent with the medical evidence and Plaintiff's self-reported activities of daily living. (R. at 23.) The ALJ found the opinion of psychological consultative examiner David Moody, Ph.D. "not fully persuasive" to the extent that he found Plaintiff to have "up to marked limitations in any area of mental functioning" because it was not consistent with Plaintiff's "normal mental status examinations," "independence with daily activities and lack of significant mental health treatment during the relevant period." (R. at 23.)

The ALJ also considered two medical opinions from Melissa Hale, NP ("Nurse Hale"). (R. at 24.) The ALJ summarized Nurse Hale's first medical opinion, which opined that Plaintiff "would be absent more than three times a month" and have "difficulty performing a regular job because of her difficulty with simple tasks." (R. at 24.) The ALJ found this opinion "not persuasive" because Nurse Hale's assessments were "inconsistent" with evidence of Plaintiff's "independence with activities of daily living, and her unremarkable mental status examinations . . . ." (R. at 24.) Next, the ALJ found Nurse Hale's second medical opinion "not fully persuasive" because Nurse Hale did not provide support for her contention that Plaintiff was "unable to sustain any work tasks" or "work due to her inability to maintain regular attendance or be available at obligatory times/days as scheduled." (R. at 24.) The ALJ noted that Nurse Hale's assessments were inconsistent with "many unremarkable mental status examinations alongside [Plaintiff]'s independence with basic activities of daily living." (R. at 24.)

Additionally, the ALJ considered the state agency medical consultants' opinions, finding them "not fully persuasive" because they found Plaintiff able to perform medium work when "the longitudinal record is consistent with a greater restriction to a range of light work." (R. at 24.) The ALJ "agreed" with Jay Shaw, M.D., who "reviewed these opinions and disagreed with the exertional and postural limitations." (R. at 24.) The ALJ also summarized the medical opinion of consultative examiner George Quarshie, M.D. ("Dr. Quarshie"),who found that Plaintiff "should have no problems working" but may "need provisions for frequent restroom breaks." (R. at 24.) Although she found Dr. Quarshie's opinion "not fully persuasive" because it "does not assess any exertional limitations," the ALJ agreed that Plaintiff "would need provisions for restroom breaks and finds that she would be off-task five percent of the time for additional bathroom breaks." (R. at 25.) Moreover, the ALJ found the medical opinion of Lisa Shah, M.D. ("Dr. Shah") "persuasive

8

in part" owing to its postural and manipulative restrictions being consistent with Plaintiff's symptoms. (R. at 25.) However, the ALJ found that Dr. Shah did "not provide adequate support for her extreme conclusion regarding [Plaintiff]'s absenteeism." (R. at 25.)

Plaintiff argues that the ALJ's evaluation of Dr. Lee's medical opinion was in error due to the ALJ finding it "generally persuasive" but omitting an explanation of Dr. Lee's assessment regarding Plaintiff's absenteeism. (Pl.'s Mem. at 10-11.) In her decision, the ALJ summarized her analysis of Dr. Lee's opinion as follows:

> The undersigned considered the opinion of [Dr. Lee], who opined that [Plaintiff] would need to take unscheduled restroom breaks during a work shift multiple times daily. She would be away from the workstation for about 20 minutes during each break. Her fecal incontinence resulted in soiling her clothes in an unpredictable manner, leading to additional off-task behavior. This opinion is generally persuasive. Dr. Lee supported his opinion by referencing [Plaintiff]'s fecal incontinence, frequent diarrhea, and abdominal pain with cramping. This is consistent with [Plaintiff]'s testimony that she uses the restroom at least six times per day. Accordingly, the undersigned finds that [Plaintiff] would have been off task 5 percent of time in an eight-hour workday for additional bathroom breaks.

(R. at 25) (internal citations omitted).

    3.  *The ALJ Erroneously Failed to Account for Plaintiff's Absenteeism.*

As a threshold matter, the Fourth Circuit has recognized that a claimant can potentially establish future absenteeism by offering a medical opinion. *See Prudich v. Saul*, No. 1:20-CV-00019, 2021 U.S. Dist. LEXIS 45935, 2021 WL 933864, at *3 (S.D.W. Va. Mar. 11, 2021) (J. Faber). In fact, the Court specifically noted that medical opinions are very helpful in that regard. *Id.* The record in this matter included opinion evidence concerning Plaintiff's absenteeism, specifically from three providers who each opined that Plaintiff would be absent from work more than three days per month. (R. at 24 (Nurse Hale), R. at 25 (Dr. Shah and Dr. Lee).). While the

ALJ specifically noted that Dr. Shah "did not provide adequate support for her extreme conclusion regarding the claimant's absenteeism," the ALJ did not articulate her assessment of Dr. Lee's estimation that Plaintiff would be absent from work more than three days per month. (R. at 25, 1179.) Further, the ALJ discredited Nurse Hale's opinion (in which she opined Plaintiff would be absent three or more days per month) on the basis that it was inconsistent with the record to the extent that Plaintiff had any marked or extreme limitations. (R. at 24.) The ALJ's failure to address absenteeism in her evaluation of Nurse Hale's opinion is noteworthy, but not necessarily in error because the ALJ appropriately articulated her reasoning for finding Nurse Hale's opinion not persuasive. However, the same cannot be said for the ALJ's treatment of Dr. Lee's medical opinion, which she found to be "generally persuasive." (R. at 25.)

In a recent case that is currently on appeal to the Fourth Circuit, the United States District Court for the Eastern District of Virginia considered a claimant's argument that the ALJ failed to address absenteeism, although the claimant's treating provider checked a box on a questionnaire regarding the average days of work per month that the claimant would be absent due to her impairments or treatment. *Faith D. v. Kijakazi*, No. 3:20-CV-334, 2021 U.S. Dist. LEXIS 181559, 2021 WL 4316110, at *3 (E.D. Va. Sept. 22, 2021). The District Court concluded that because the ALJ explained why he found the medical opinion non-persuasive, incorporated the claimant's medical history into the reasoning, and "was not required to assume potential future absences based on the record of mostly scheduled, non-emergency medical appointments, the ALJ satisfied the requirement that she 'build an accurate and logical bridge' from the evidence to her conclusions in the [residual functional capacity]." 2021 U.S. Dist. LEXIS 181559, [WL] at *4.

To the extent that the reasoning in *Faith* is considered on appeal and upheld by the Fourth Circuit, the fact pattern is distinguishable from the instant matter. In *Faith*, the ALJ noted that the

10

provider did not support his opinion that the claimant would be absent from work more than twice per month, although the questionnaire prompted him to explain his opinion. 2021 U.S. Dist. LEXIS 181559, [WL] at *3. Here, the ALJ did not articulate any such reasoning, and the Court cannot assume that reasoning even if an independent review of the opinions supports it. Moreover, *Faith* is distinguishable because the ALJ found the provider's opinion not persuasive. Conversely, in this case, the ALJ found Dr. Lee's opinion "generally persuasive," but never acknowledged or reconciled the portion of the findings relating to absenteeism. (R. at 25.)

Plaintiff's attorney elicited testimony from the vocational expert that having more than two absences per month, or being more than twelve percent off task, would preclude gainful employment in the semi-skilled occupations identified by the vocational expert. (R. at 60.) However, the ALJ never reconciled this testimony with the opinions regarding absenteeism when concluding that Plaintiff could perform semi-skilled occupations. Despite the evidence, the ALJ did not provide meaningful analysis for Plaintiff's potential for absenteeism and how that would affect her ability to do jobs identified by the vocational expert. Certainly, the ALJ might have found that Plaintiff did not credibly establish that she would miss work to the extent that it would preclude substantial gainful activity, but the ALJ did not articulate those findings, reconcile those portions of the medical opinions concerning absenteeism, or explain why she did not include residual functional capacity limitations related to work absences despite finding Dr. Lee's opinion generally persuasive.

The opinions concerning Plaintiff's absenteeism, considered along with the vocational expert's testimony that anything more than two absences per month would preclude employment, necessitated explanation. *See e.g., Janel G. v. Kijakazi*, No. 5:20-CV-00018, 2021 WL 3076407, at *10 n.10 (W.D. Va. July 21, 2021) ("Janel's treating neurologist opined that Janel would not be

11

able to sustain full-time employment if she were absent from work more than one day per month. Thus, on remand, the Commissioner should re-evaluate Janel's treating neurologist's opinion and determine whether her migraines warrant additional [residual functional capacity] limitations.") (citations omitted); *Dimailig v. Saul*, No. 119CV441LMBJFA, 2020 U.S. Dist. LEXIS 215351, 2020 WL 6749856, at *11-12 (E.D. Va. Nov. 17, 2020) ("Significantly, all but five of plaintiff's doctor's visits over this period occurred on weekdays and presumably required her to miss work. Yet the ALJ's discussion of an absenteeism limitation was sparse," and despite vocational expert testimony that two absences per month would preclude employment, "the ALJ did not adequately consider an absenteeism limitation, despite its clear relevance given plaintiff's medical history."). Given the lack of explanation, it is impossible to discern – without improperly speculating and inserting *post hoc* rationale for the ALJ – whether the ALJ sufficiently considered absenteeism or tardiness as a potential limitation to Plaintiff's ability to work.

The ALJ failed to explain how the pertinent evidence regarding absenteeism is reconcilable with the vocational expert's testimony and Dr. Lee's opinion regarding tolerated absences in a manner that allows the Court to determine whether the ALJ's decision is supported by substantial evidence. "To undertake this analysis in the first instance would usurp the ALJ's role as fact finder." *Shoemaker v. Saul*, No. 1:19CV441, 2020 U.S. Dist. LEXIS 159451, 2020 WL 5117992, at *6 (M.D.N.C. Aug. 31, 2020) (citations omitted). For those reasons, the undersigned concludes that the ALJ's decision is not supported by substantial evidence which necessitates remand.

### B. Remaining Allegations of Error.

In light of the undersigned's recommendation that this matter be remanded for further consideration as discussed above, the Court need not address the remaining errors alleged by Plaintiff as they may be rendered moot on remand. As part of the overall reconsideration of the

claim upon remand, the ALJ should, if necessary, also take into consideration the additional allegations of error raised by Plaintiff. *Gannon v. Colvin*, No. 9:15-3250-RMG-BM, 2016 U.S. Dist. LEXIS 130402 (D.S.C. Aug. 22, 2016) (remanding and noting that, "with respect to any remaining claims of error asserted by the Plaintiff, the ALJ will be able to reconsider and re-evaluate the evidence *in toto* as part of the reconsideration of this claim").

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED, Defendant's Motion for Summary Judgment (ECF No. 19) be DENIED, and the final decision of the Commissioner be VACATED and REMANDED consistent with this Report and Recommendation.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge M. Hannah Lauck.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                  /s/ MRC
                                                  Mark R. Colombell
                                                  United States Magistrate Judge

Richmond, Virginia
Date: <u>July 13, 2022</u>